# Polis et al., Appellants, *v.* Philadelphia & Reading Railway Company.

*Negligence—Railroads—Passenger — Injury to hand — Sudden closing of car door.*

In an action against a railroad company by a passenger for an injury to her hand, a nonsuit is properly entered, where the evidence is that plaintiff when about to light from the platform of a standing train, placed one of her hands on a door jamb of the car on which she was riding, that the door closed, injuring the hand, and the only evidence as to the cause of the door closing is a statement by plaintiff that a man whom she described as the conductor, opened the door after the hand was pinched and said: "I am sorry, the door slipped out of my hand."

Argued March 23, 1922. Appeal, No. 323, Jan. T., 1922, by plaintiffs, from order of C. P. No. 3, Phila. Co., March T., 1921, No. 1445, refusing to take off nonsuit, in case of Miriam E. Polis, by her mother and next friend, Jennie S. Polis and Jennie S. Polis in her own right, v. Phila. & Reading Railroad Co. Before MOSCHZISKER, C. J., FRAZER, WALLING, KEPHART and SADLER, JJ. Affirmed.

Trespass for personal injuries. Before FERGUSON, J.
The opinion of the Supreme Court states the facts.
Nonsuit, and refusal to remove it. Plaintiffs appealed.

*Error assigned* was refusal to take off nonsuit, quoting record.

*Samuel Moyerman,* for appellants.

*Wm. Clarke Mason,* for appellee.

PER CURIAM, April 17, 1922:

The minor plaintiff, when about to alight from the platform of a standing train, placed one of her hands on a door jamb of the car on which she was riding; the door closed and injured the hand; action was brought against the railroad company for damages; a nonsuit was entered, which the court below refused to remove; hence this appeal.

We affirm, on the following excerpt from the opinion of the trial judge: "This young lady, who is very small, stepped out onto the platform [of the coach on which she was riding] and turned to go down the steps; she left her hand around this wooden door frame, with her fingers over the place where the door would come, if it swung to of its own accord, or if somebody kicked it shut, or if somebody actually pulled it or threw it shut. As a matter of fact, there is no evidence at all as to how the door [was] shut, except that which we may draw from the words of the man she described as the conductor, who opened the door, after her hand was pinched, and said: 'I am sorry; the door slipped out of my hand.' From this you might infer he had the door knob in his hand, or the frame of the door in his hand, intending to close it, that he hadn't gotten hold of it sufficiently, and it had slipped out of his fingers. Could you infer negligence on the part of the conductor, assuming he was the conductor, from that fact? To do so [in the absence of evidence as to how long the hand had been on the door jamb] you would have to infer that he knew plaintiff's hand was there, or he ought to have known [it], or that, in the exercise of his duty, as custodian of the train, so to speak, and caretaker of the passengers, he should have known some person was out on the platform with her hand around the door frame and in the socket or groove where the door would come. I do not think the law justifies us in putting such a duty upon the crew of a train, and the decisions of our courts are to that effect": see L'Hommedieu v. R. R. Co., 258 Pa. 115.

The order appealed from is affirmed.