# The Pittsburg and Connellsville Railroad Company *versus* McClurg.

1. If a passenger in a railroad car were known to be subject to epileptic fits, &c., or insane, more care and attention would be required of the carrier than in ordinary cases; but the carrier must know the condition of the passenger and that extra care was necessary and his duty.

2. If injury be not wilfully done, when it accrues from an exposure of an elbow or arm out of a window of a car while moving, negligence in the carrier is not to be inferred.

3. When the carrier has provided for a passenger a seat safe and secure, in the absence of accident to the train, and has a safe and convenient car, well conducted and skilfully managed, his duty towards the passenger has been performed.

4. On entering the car it is the duty of the passenger to conform to all the reasonable regulations of the company for occupying, using and leaving the car.

5. It is the duty of courts in cases of clear negligence arising from an obvious disregard of duty and safety to determine it as a question of law.

6. Sleeping where due care would require one to be awake or in dangerous circumstances is negligence, where there are no facts to justify or qualify the act.

7. Where a traveller puts his elbow or arm out of the window voluntarily, without any qualifying circumstances impelling him to it, it is negligence *in se;* and when that is the state of the evidence it is the duty of the court to declare the act negligence in law.

8. New Jersey Railroad Co. *v.* Kennard, 9 Harris 203, overruled.

November 13th 1867. Before THOMPSON, STRONG, READ and AGNEW, JJ. WOODWARD, C. J., absent.

Error to the District Court of *Allegheny county :* No. 79, to October and November Term 1867.

This appeared to have been an action by W. A. McClurg against The Pittsburg and Connelsville Railroad Company, for negligence.

The following is the history of the case furnished in their paperbooks by the plaintiffs in error; none of the evidence being given.

"Mr. McClurg, the plaintiff, while a passenger upon the de-

[Pittsburg and Connellsville Railroad Co. v. McClurg.]

fendants' train of cars, suffered his elbow to project from the window of the car in which he was riding. In passing a switch, the plaintiffs' elbow came in contact with a car standing on the switch, and was broken."

The plaintiff's 3d point, which was affirmed, was,

A passenger on a railway car who has unconsciously suffered his elbow to slip out beyond the window sill, is not necessarily guilty of negligence.

The defendants' 2d point point was: .

If the jury believe from the evidence that the plaintiff was riding in the car of defendants with his elbow or arm projecting to any extent out of the window, by reason of which he sustained the injury complained of, he was guilty of a want of due care, which would prevent him from maintaining his action

To this the court (Williams, A. J.) answered:—

"Declined as matter of law, and submitted to the jury as a question of fact, under all the circumstances of the case, whether the plaintiff, in permitting his arm or elbow so to project, was or was not guilty of negligence."

The jury found for the plaintiff $1027.

The defendants took a writ of error, and assigned for error the answers to the points.

*G. Shiras, Jr.*, for plaintiffs in error, referred to New Jersey Railroad *v.* Kennard, 9 Harris 203 ; Todd *v.* Old Colony Railroad, 3 Allen 21 ; s. c. 7 Id. 207 ; N. Penna. Railroad *v.* Heilman, 13 Wright 60 ; Catawissa Railroad *v.* Armstrong, 2 P. F. Smith 286 ; Pennsylvania Railroad *v.* Ogier, 11 Casey 71 ; Same *v.* Zebe, 9 Id. 318 ; Hudson Railroad *v.* Ernst (N. Y.), Railway Times 1863, p. 362 ; Hazard *v.* Chicago B. & Q. Railroad, Id. 1865, p. 346.

*J. A. Lowrie* and *T. M. Marshall*, for defendant in error, cited N. Jersey Railroad *v.* Kennard, and Todd *v.* Old Colony Railroad, *supra.*

The opinion of the court was delivered, January 7th 1868, by

THOMPSON, C. J.—The plaintiff below, as we learn from the very brief history of the case by the plaintiff in error, no portion of the testimony being given, was injured while a passenger in the cars of defendant, by reason of the protrusion of his elbow beyond the sill of the car window next to which he sat during the journey, or part of it, coming in contact with a car standing on a switch on the defendants' road. The plaintiff had a verdict on the ground of negligence on the part of the company, as we are informed, in carrying the plaintiff, by reason of which he was hurt, but in what the negligence consisted it is not easy to

say, as neither the *narr.* nor its substance is given. Was it for negligence in constructing the switch? Or was it because the defendant had not barricaded its car windows? We do not know; but still, perhaps, we may be able to discuss the only point of importance presented, without knowing this.

Assuming the fact, or claiming that negligence on part of the company in performing their duty towards the plaintiff in carrying him had been proved, his counsel prayed the court below to charge as follows:—

"A passenger on a railway car who has unconsciously suffered his elbow to slip beyond the window sill is not necessarily guilty of negligence: N. J. Railroad Co. *v.* Kennard, 9 Harris 203."

This the learned judge unqualifiedly affirmed, doubtless on the authority of the case referred to in the point. He did right in following the precedent cited; even if wrong he was bound to do so. If, therefore, there was error in the instruction, it was not his fault.

That unconsciousness, arising from insensibility, the result of disease or injury, might qualify what would otherwise be negligence, may be conceded, but that would arise from the difference in the degree of care required on part of the carrier. If a passenger were known to be afflicted with epileptic fits, or was entirely insane, it would be reasonable to require of the carrier more care and attention than in the case of ordinary passengers; but then the carrier must know the condition of the passenger, and that extra care and control were necessary, and his duty. This, however, we need not discuss, for nothing like this existed in this case. We must regard the remark, "unconsciously suffering his elbow to slip out beyond the window sill," to mean inattentively. In that sense it was negligently suffered to slip. Of course, this was negligence *in se*, unless he was under no obligation to take care of himself. But no case asserts that, and every case the contrary. Out of the omission to do so springs the doctrine of contributory negligence, which defeats a plaintiff, and which is so firmly established as a principle of law that nobody dreams of doubting it. We have the case, then, broadly, I think, that negligence is not to be inferred, when injury accrues from an exposure of an elbow or an arm out of a car window, while the train is moving, if it be not wilfully done.

This cannot be maintained on any reasonable principle, we think. When a passenger on a railroad purchases his ticket it entitles him to a seat in the cars. In the seat, no part of his body is exposed to obstacles outside of the car. He is secure there, ordinarily, from any contact with them. Where he is thus provided with a seat, safe and secure in the absence of accident to the train, and the carrier has a safe and convenient car, well conducted and skilfully managed, his duty is performed towards

the passenger. The duty of the latter on entering arises, namely, that he will conform to all the reasonable rules and regulations of the company for occupying, using and leaving the cars; and, after doing so, if injury befall him by the negligence of the carriers, they must answer; if he do not so conform, but is guilty of negligence therein, and is injured, although there may be negligence on part of the carriers, their servants and agents, he cannot recover: Sullivan v. Read. Railroad Co., 6 Casey 234; The Penna. Railroad Co. v. Zebe and Wife, 9 Id. 318, and other authorities. In the latter case we said what is quite apposite to this: " We hold on these principles, that the company's liability could not be fixed for the injury consequent on a choice of the passenger in disregard of the provisions made by it for his safety. It was, we think, error in the court to submit the question of the right of the parties to leave the cars at either side to the jury in the absence of proof or justifying necessity for so doing. It was not negligence on the part of the company, that they did not by force of barriers prevent the parties from leaving at the wrong side. People are not to be treated as cattle; they are to be presumed to act reasonably in all given contingencies, and the company had no reason to expect anything else in this case."

Here the duty of care on the part of the passenger is asserted; and it was a case in which two passengers, the plaintiff and son, instead of leaving the cars by the platform on the station, left on the opposite side, and the son was killed by a passenger train on the other track. We held that this was negligence *in se* on part of the passengers, and, in the absence of circumstances justifying the exit on that side of the car, the court erred in not charging that it was negligence in law. The authority of this case has not been shaken in this particular. We have repeatedly held that it is the duty of courts in cases of clear negligence, arising from an obvious disregard of duty and safety, to determine it as a question of law: 2 P. F. Smith 282; 11 Casey 71; 9 Id. 318. Numerous other authorities might be cited for this. Where the inference from the facts is necessarily that there is negligence, the court ought to determine the negligence as a matter of law. Of course the assertion of the principle in this way presupposes no answer to the facts, so as to rebut the inference to be drawn, and implies that this may be done in all cases, if there be facts to that effect.

A passenger, on entering a railroad car, is to be presumed to know the use of a seat, and the use of a window; that the former is to sit in, and the latter is to admit light and air. Each has its separate use. The seat he may occupy in any way most comfortable to himself. The window he has a right to enjoy—but not to occupy. Its use is for the benefit of all, not for the comfort alone of him who has by accident got nearest to

it. If, therefore, he sit with his elbow in it, he does so without authority ; and if he allow it to protrude out, and is injured, is this due care on his part ?   He was not put there by the carrier, nor invited to go there ; nor misled in regard to the fact that it is not a part of his seat, nor that its purposes were not exclusively to admit light and air for the benefit of all.   His position is, therefore, without authority.   His negligence consists in putting his limbs where they ought not to be, and liable to be broken without his ability to know whether there is danger or not approaching.   In a case, therefore, where the injury stands confessed, or is proved 'to have resulted from the position voluntarily or thoughtlessly taken, in a window, by contact with outside obstacles or forces, it cannot be otherwise characterized than as negligence, and so to be pronounced by the court.   This is undoubtedly the rule in Massachusetts : Todd *v.* The Old Colony Railroad Co., 30 Allen 21 ; and again in 7 Allen 207.   In that case the point was distinctly presented whether it was negligence to ride with an arm or an elbow out of a car window, and it was declared that it should have been so ruled by the court instead of being referred to the jury ; and the court below was reversed for not so ruling.   (See opinion of C. J. Bigelow in the last case.)   So in substance is Holbrook *v.* The Utica & Sch. Railroad Co. 236.[1] It is true, the judge below having given a *very decided opinion* on the fact of negligence in sitting with an elbow on the window, and that it was negligence, the Court of Errors and Appeals refused to interfere ; but Ruggles, J., indicated his opinion to be in favor of the doctrine.   We held, in the North Penna. Railroad Co. *v.* Heilman, 13 Wright 60, that a failure of a traveller, when crossing a railroad track, to look out for passing trains, is negligence in law, and so to be pronounced.   This was fully in accord with what we had repeatedly held, that " what in a given state of facts constitutes negligence, is generally a question of law :" per Woodward, C. J., in Catawissa Railroad Co. *v.* Armstrong, 2 P. F. Smith 286 ; and in Penna. Railroad Co. *v.* Ogier, 11 Casey 71, we said " there may undoubtedly be cases in which only the facts proved may present so clearly and incontestably features of negligence in regard to the specific ground of complaint, that it may become the duty of the courts to pronounce it such as matter of law."   There are many cases in other states in support of this rule.

In the absence of some justifying necessity, or incapacity to take care of himself on part of the passenger, no one can doubt, I think, from the reason of the thing, in view of the nature of the vehicle used, being a railroad car, that to extend an arm or a hand beyond the window sill is dangerous, and is recklessness

---

[1] Since this opinion was delivered, the Supreme Court of Indiana has held the same doctrine, on a precisely similar state of facts, in The Indianapolis and Cincinnati Railroad Co. *v.* Rutherford.   See Law Reg. of June 1868, p. 476.

or negligence. Wherever the facts present such a case singly, and without any controlling or justifying necessity, we think the court ought to declare the act negligence; and as there was nothink like this shown in the case before us, we think the court ought not to have affirmed the plaintiff's point. Unconsciously exposing himself did not help the plaintiff's case, as it was not shown that this unconsciousness was not the result of a want of prudent attention to his situation on part of the plaintiff. It would be a novel answer to the allegation of negligence, to allege that the plaintiff had slept in the position he was in when hurt; and that would be a condition of unconsciousness. Sleeping when due care would require one to be awake, or in dangerous circumstances, is negligence, and no answer to the company can be given to such act. Of course these views are predicated of a case in which there are no facts to qualify or justify the act. It is possible that a state of facts might be found to show an exception to the rule, and where that occurs the rule ceases. But none such appear as this case is presented.

It must be admitted that the case of New Jersey Railroad Co. v. Kennard, 9 Harris 203, announces a different rule. There the plaintiff's elbow came in contact with a post or upright of a bridge. The case was not put upon the ground that there was negligence on the part of the company in constructing the bridge, but upon the ground that the company were negligent in not placing barriers around the window to prevent passengers from exposing their limbs outside. The learned judge, Gibson, C. J., instructed the jury that a car which was not so provided was not, to use his peculiar expression, "roadworthy." Predicated of this idea, he held that passengers had a right to ride as they pleased, and to sit with their elbows on the window-sills, and beyond if they chose. In fact, he seems to have required no duty of care on part of the passenger in this particular; for, had he, it seems to me he would, even on his own theory of the duty of the company to barricade their windows, have come to the conclusion, if the want of it was negligence, it was also negligence on part of the passenger not to take greater care on account of the want of the precaution, and that would have been contributory negligence, which would have prevented the plaintiff from recovering.

The case was affirmed in a *per curiam* opinion, for the reasons given by the learned judge below, but with a reservation of approval of that which was really the ground on which the case was put. "The language of the learned judge," says the opinion, "who presided at the trial seems to be too broad as a general principle, where he says that no car is good if the windows are not so constructed as to prevent the passengers from putting their limbs through them. But in its application to a road which in

places is so narrow as to endanger projecting limbs, the instruction is proper."

It is not unjust to this *per curiam* to say that it repudiated the main ground on which the case was put in the court below, and affirmed it on a principle not in the case at all, namely, the narrowness of the passage-way under the bridge. The bridge was not built by the railroad company. As it was over a canal, it was probably built by the canal company. The passage-way was wide enough for the cars to pass conveniently, but that is nothing to the purpose; the narrowness of the passage-way was not the ground of the recovery. The report of the case says the "whole question was whether the defendants were obliged to construct their cars with slats, bars, wire gauze or other barricades, so that a passenger could not put his arms out of the windows? If the defendants did not do so, whether they are liable?" It is evident the case was very little considered, and, in the presence of authorities cited, ought not now to be regarded as the law. It is very remarkable that it should have been said in the opinion that the doctrine of barricades about the car windows was too broad, as a general principle, but just in its application where the passage-way was so narrow as to endanger projecting limbs. This was a limitation of the principle impracticable in practice. The windows would necessarily be the same on the entire road, if made to suit any peculiar portion of it. In this again is shown that it was not a case which had been considered much.

In conclusion, we have simply to reassert, that where a traveller puts his elbow or an arm out of a car window, voluntarily, without any qualifying circumstances impelling him to it, it must be regarded as negligence *in se;* and when that is the state of the evidence it is the duty of the court to declare the act negligence in law.

We think the court erred in answering the plaintiff's point in the affirmative, and the defendant's in the negative, and for these reasons the judgment must be reversed.

Judgment reversed, and a *venire de novo* awarded.