## Nebel *v.* Burrelli, Appellant, et al.

Argued March 20, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and JONES, JJ.

*Sanford M. Chilcote,* with him *Dickie, Robinson & McCamey,* for appellant.

*S. V. Albo,* with him *M. E. Catanzaro* and *Leo A. Nunnink,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, April 9, 1945:

The mere happening of a collision between the vehicle of a common carrier and a vehicle under other control or management does not give rise to any inference of negligence on the part of the carrier. The rule of res ipsa loquitur does not apply to such an accident: *Zaltouski v. Scranton Rwy. Co.,* 310 Pa. 531, 165 A. 847; *Hughes v. Philadelphia Transportation Co.,* 154 Pa. Superior Ct. 162, 35 A. 2d 544. In the present case, however, there was evidence from which the jury would

have been justified in concluding that the accident for which this suit was brought was caused by the negligent operation of either or both of the vehicles involved.

Plaintiff, one warm summer afternoon, was a passenger in a bus operated on behalf of Leonardo Burrelli, who was engaged in the business of a common carrier. The windows of the bus were wide open, and plaintiff, who occupied the fourth cross seat from the front on the left-hand side, had his arm resting on the 2 inch wide sill but not projecting outside the line of the bus. The bus was running in a southerly direction uphill on Linden Avenue in East Pittsburgh. There are two trolley tracks on Linden Avenue, which is a 31 foot wide street; the width of the "dummy", or distance between the tracks, is slightly over 4 feet. The left wheels of the bus were approximately in the middle of the "dummy" and therefore within about 2 feet of the near rail of the northbound track. At a point near the Borough Building on Linden Avenue there is a pronounced curve to the left for southbound traffic, and, as the bus was rounding this curve, a street car of the Pittsburgh Railways Company, coming downhill on the northbound track, passed the bus in the bend. There was testimony to the effect that, partly because the rails were "bumpy", "rough", "irregular" or "wavy", and partly because of its speed, the car was "weaving", "waiving" or "wobbling" from side to side; according to plaintiff the paving in the "dummy" at that point was in poor condition and the bus also swayed as it passed the street car. The front part of the car passed the bus safely, but the left rear came into collision with, or "side-swiped", the bus at the point where plaintiff was seated. There was a "bump", a "thud" or a "thump", and at the same moment plaintiff felt a sharp pain in his elbow; his arm immediately started to bleed and it subsequently developed that it was quite badly injured. Action having been brought against both Burrelli and the Pittsburgh Railways Company, the jury returned a verdict for

plaintiff against the former of $4500, but in favor of the latter defendant. Burrelli appeals from the refusal of the court either to grant his motion for judgment n. o. v. or to award him a new trial.

As far as the request for judgment n. o. v. is concerned the court properly refused it. Negligence of the operator of the bus might have been found to exist in running it too near the pathway of the northbound street car, especially when the two vehicles were passing one another in the curve. The swaying of the car coming around and into the bend, accentuated as it no doubt was by the defective condition of the rails, was a factor that had to be anticipated. True, the driver of the bus testified that there were vehicles parked to his right which prevented him from moving over in that direction, but it was for the jury to say whether such was the fact. As far as negligence on the part of the motorman is concerned, if he, seeing the bus rounding the bend, nevertheless operated his car down the hill and around the curve with a speed sufficient to cause it to sway from side to side, as several witnesses said that it did, the jury might have found him partly or solely at fault; cf. *Crenny v. Philadelphia Rapid Transit Co.*, 89 Pa. Superior Court 380. While no one actually saw any contact occur between plaintiff's elbow and the street car, nevertheless, since the injury was sustained at the very moment of the "bump", it is not only a reasonable but almost an inevitable inference that his arm was struck by the car; cf. *Liguori, Administrator, v. Philadelphia*, 351 Pa. 494, 500, 501, 41 A. 2d 563, 566.

Appellant does not claim, on this appeal, that plaintiff was guilty of contributory negligence. Such a claim would have been justified only if plaintiff's arm had protruded beyond the outer line of the sill: *Pittsburgh & Connellsville R. R. Co. v. McClurg*, 56 Pa. 294; *Paynter v. Atlantic City R. R. Co.*, 62 Pa. Superior Ct. 455. He testified that there was no such protrusion, and there was no evidence to the contrary. While one is tempted

to doubt the likelihood of his arm having been wholly inside the bus immediately prior to its being struck, such an occurrence cannot be said to have been impossible, for the jar of the collision might itself have thrown the arm outside, as apparently occurred in *People's Passenger Rwy. Co. v. Lauderbach*, 4 Penny. 406, 408, and in *Farlow v. Kelly*, 108 U. S. 288.

The motion for a new trial should have been granted. There were two errors in the charge of the learned trial judge relating to legal principles vital to the decision of the case. Speaking of the duty owed by a common carrier to its passengers the court said: "It is the highest degree of care. The equipment should be reasonably modern, the law says, and the operator shall exercise such a high degree of care that the passengers shall be safely transported to their destination, and if that rule of law is violated and a passenger is injured then he has a claim for damages." This was equivalent to declaring that a common carrier is an insurer against accidents to its passengers, which, of course, is not the law: *Mackowski v. Philadelphia Rapid Transit Co.*, 265 Pa. 34, 108 A. 168; *Swink v. Philadelphia Rapid Transit Co.*, 277 Pa. 220, 120 A. 827; *Petri v. Pittsburgh Rwys. Co.*, 328 Pa. 396, 400, 195 A. 107, 109; *Archer v. Pittsburgh Rwys. Co.*, 349 Pa. 547, 548, 37 A. 2d 539, 540. The verdict of the jury may well have resulted from a belief that merely because plaintiff was injured while a passenger in the bus he was entitled to recover even if the accident was not in anywise due to the negligence of the operator. The learned trial judge also charged: "The law is that where a passenger is injured either by anything done or omitted by the carrier, its employes, or anything connected with the appliances of transportation, the burden of proof is upon the carrier to show that such injury was in no way the result of its negligence", and he affirmed a point presented by plaintiff to that effect. Our later cases are all to the effect that it is only where an accident to a passenger happens through

defective appliances or means of transportation, such as tracks, cars, machinery or motive power, that the burden is cast upon defendant to exculpate itself from an inference of negligence; in all other cases the burden is upon the passenger to prove such negligence: *Swink v. Philadelphia Rapid Transit Co.,* 277 Pa. 220, 120 A. 827; *Zaltouski v. Scranton Rwy. Co.,* 310 Pa. 531, 534, 165 A. 847, 848; *Dupont v. Pennsylvania R. R. Co.,* 337 Pa. 89, 91, 10 A. 2d 444, 445.

In ordering a new trial, as we must because of the errors referred to, it is proper that the verdict in favor of the Pittsburgh Railways Company should be set aside and that that Company should be reinstated as a party defendant. In weighing the question of responsibility for the accident a jury cannot fairly dispose of the case without having both parties before it so as to enable it to determine which of the operators was negligent, or whether both were at fault: see *Biehl v. Rafferty,* 349 Pa. 493, 37 A. 2d 729.

The order of the court below refusing defendant Burrelli's motion for judgment n. o. v. is affirmed; the order refusing his motion for a new trial is reversed; the verdict in favor of defendant Pittsburgh Railways Company is set aside, and a new trial is ordered as to both defendants.